
# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| MAURISHA WILSON, | ) |
| Plaintiff, | ) |
| v. | ) 7:21-cv-01514-LSC |
| MERCEDES-BENZ U.S. INTERNATIONAL, INC. ("MBUSI"), | ) |
| Defendant. | ) |

## MEMORANDUM OF OPINION

### I. Introduction

Maurisha Wilson ("Wilson" or "Plaintiff") brings the present action against her former employer, Mercedes-Benz U.S. International, Inc. ("MBUSI" or "Defendant"). (Doc. 1.) Wilson asserts a retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). (*Id.*) Wilson alleges retaliatory termination because of a sexual harassment complaint that she filed during her employment at MBUSI. (*Id.* at 8–9.)

Presently before this Court is MBUSI's Motion for Summary Judgment. (Doc. 25.) The motion (doc. 25) has been fully briefed and is ripe for review. For the reasons set forth below, the motion (doc. 25) is due to be DENIED.

II.     **Background**[1]

In April 2014, a third-party employer, which MBUSI identifies as "NAOS," hired Wilson to work at an MBUSI facility on the Trim Line in the Assembly Department. (Doc. 26-1 at 18.) MBUSI hired Wilson directly in September 2016, and Wilson continued working in the same department. (*Id.* at 19.)

MBUSI maintains Human Resources Regulations ("HR Policies") applicable to all employees, including attendance and anti-harassment policies. (Doc. 26-5 at 4–40.) Each employee receives a Team Member Handbook ("Handbook") summarizing MBUSI's HR Policies. (Doc. 26-5 at 86–137.) MBUSI's Corrective Performance Review ("CPR") system, included in the Handbook, outlines the recourse and disciplinary procedures for violations of the HR Policies. (Doc. 25 at 3–4; Doc. 26-5 at 16–17, 24–29, 118–19; Doc. 27 at 4.) MBUSI issues CPRs at different levels, including Level I, Level II, Level III, and Termination. (Doc. 25 at 3; *see also* Doc. 26-5 at 27.) The CPR level depends upon the persistence and/or severity of the violation. (*See* Doc. 26-5 at 24–29.) An employee who receives a CPR while under

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

an active Level II CPR will be subject to a Level III CPR or termination, and an employee who receives a CPR while under an active Level III CPR will be subject to termination. (Doc. 26-5 at 28.) Level I CPRs are active for 180 days from the date of the violation; Level II and Level III CPRs are active for 360 days from the date of the employee's latest violation. (*Id.*)

Furthermore, MBUSI's attendance and harassment policies follow the CPR framework. MBUSI utilizes an occurrence-based attendance policy, whereby an employee who accumulates three occurrences of attendance policy violations within a 180-day period will receive a Level I CPR. (Doc. 25 at 4; Doc. 26-5 at 16–17.) Pursuant to the policy, certain violations count as more than one occurrence. (Doc. 25 at 4; Doc. 26-5 at 15.) For example, an absence with a call-in counts as two occurrences, and an absence without a call-in counts as three occurrences. (Doc. 26-5 at 15.) Moreover, MBUSI has anti-harassment and retaliation policies that permit the termination of an employee without the issuance of a CPR if MBUSI, following an investigation, finds that the employee engaged in harassing or retaliatory conduct. (Doc. 25 at 4; Doc. 26-5 at 24–25.)

On September 24, 2018, Wilson received a Level I CPR for violating MBUSI's attendance policy. (*E.g.*, Doc. 26-1 at 22; Doc. 26-2 at 2.) In March 2019, Wilson received another Level I CPR for violating MBUSI's Personal Protective Equipment

("PPE") Mutilation Standard because she was wearing pants with metal rivets. (*E.g.*, Doc. 26-1 at 23; Doc. 26-2 at 4.) On August 6, 2019, Wilson and another team member, Margarette Johnson, each received Level III CPRs due to a verbal altercation between them. (*E.g.*, Doc. 26-1 at 24–25; Doc. 26-2 at 6.) Following the incident, MBUSI moved Wilson to the Sealer Line in the Paint Department. (Doc. 1 at 3; Doc. 26-1 at 24–26.) Then, on December 2, 2019, Wilson switched to a different line in the Paint Department, where her Team Leader was Fred Rogers ("Rogers") and her Group Leader was Lajuan Jones ("Jones"). (Doc. 1 at 5; Doc. 25 at 5; Doc 26-1 at 25–26.)

On December 16, 2019, Wilson submitted a complaint with a written statement to Jones, alleging sexual harassment by Rogers. (Doc. 1 at 4–5; Doc. 5 at 5.) Jones sent the complaint to the Human Resources department ("HR"), and HR conducted an investigation. (Doc. 1 at 5–6; Doc. 5 at 5.) Following the investigation, MBUSI terminated Rogers's employment while the facility was shut down over the holidays. (Doc. 25 at 5; Doc. 27 at 4.)

On January 24, 2020, Wilson was absent from work because her car was repossessed. (Doc. 25 at 6; Doc. 27 at 5.) Wilson called in and requested a vacation day to avoid accruing an occurrence under MBUSI's attendance policy. (Doc. 25 at 6; Doc. 27 at 4.) MBUSI's attendance policy sets a vacation allotment, whereby only

a certain number of team members may be on vacation during a particular shift. (Doc. 26-5 at 20.) The vacation allotment for Wilson's team was one team member, and one of Wilson's team members was already on vacation that day. (Doc. 25 at 6; Doc. 27 at 4.) Subject to approval, employees may also utilize Emergency Vacation ("EV"). (Doc. 26-5 at 19–20.) Jones, Wilson's Group Leader, denied Wilson's vacation request for regular vacation and EV. (Doc. 25 at 6; Doc. 27 at 4.) Consequently, Wilson's absence was unexcused and considered an absence with a call-in, which counts as two occurrences pursuant to MBUSI's attendance policy. (Doc. 25 at 6; Doc. 26-5 at 15; Doc. 27 at 4.)

On February 26, 2020, Wilson was absent from work because a police officer stopped her for driving with a suspended license and without insurance. (Doc. 25 at 6–7; Doc. 27 at 4.) Wilson called in and requested a vacation day. (Doc. 25 at 6–7; Doc. 27 at 4.) Wilson's group had already met its vacation allotment for that day, and Jones denied Wilson's vacation request for regular vacation and EV. (Doc. 25 at 6–7; Doc. 27 at 4.) As a result, Wilson's absence was again unexcused and considered an absence with a call-in. (Doc. 25 at 6–7; Doc. 27 at 4.)

Wilson accumulated two occurrences for each of her absences pursuant to MBUSI's attendance policy. (Doc. 25 at 6–7; Doc. 26-5 at 15; Doc. 27 at 4.) Wilson therefore received a Level I CPR because she accumulated three or more

occurrences within 180 days. (Doc. 25 at 6–7; Doc. 26-5 at 16; Doc. 27 at 4.) At the time, Wilson was still under an active Level III CPR due to her altercation with Margarette Johnson in August 2019. (Doc. 25 at 7; Doc. 27 at 5.) According to MBUSI's HR Policies, an employee who receives another CPR while under an active Level III CPR is subject to termination. (Doc. 25 at 8; Doc. 26-5 at 28; Doc. 27 at 5.) MBUSI suspended Wilson pending her termination and ultimately terminated her employment on March 10, 2020. (Doc. 25 at 8; Doc. 27 at 5.)

### III. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[2] and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecommc'ns, Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but determine whether there are any genuine issues

---

[2] A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as

a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV. Discussion

Wilson alleges that MBUSI took retaliatory actions against her for filing a claim of harassment against Rogers. Wilson's claims center on the following employment actions: (1) denial of EV on January 24, 2020; (2) denial of EV on February 26, 2020; and (3) termination of her employment. Wilson alleges that MBUSI took these actions for retaliatory reasons in violation of Title VII.

### A. Title VII Administrative Exhaustion

Valid claims under Title VII must meet all requirements for administrative exhaustion. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970).[3] Administrative exhaustion under Title VII requires filing a timely charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* A plaintiff must file an EEOC charge "within one hundred and eighty days after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1). If the EEOC declines to bring its own civil action against the employer, it will issue a Notice of Right to Sue to the employee. 29 C.F.R. § 1601.28(b)(1). Upon receipt of this notice, the employee has a period of ninety days to bring suit against the employer. 42 U.S.C.

---

[3] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions that the former Fifth Circuit handed down before October 1, 1981.

§ 2000e-5(f)(1).

Wilson filed a charge of discrimination with the EEOC on July 28, 2020. (Doc. 1 at 3; Doc. 5 at 3.) The EEOC issued a Notice of Right to Sue to Wilson on August 19, 2021. (Doc. 1 at 3; Doc. 5 at 3.) Wilson filed the above-styled complaint on November 15, 2021, within ninety days of receiving the Notice of Right to Sue. (Doc. 1.) Wilson has thus satisfied the Title VII requirements for administrative exhaustion. *See* 42 U.S.C. § 2000e-5(f)(1).

### B.   The *McDonnell Douglas* Framework[4]

Absent direct evidence of retaliation, the Eleventh Circuit applies the *McDonnell Douglas* burden shifting framework to Title VII retaliation claims. *See Brungart v. BellSouth Telecommc'ns, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000); *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). *See generally McDonnell Douglas*, 411 U.S. 792. Under this framework, the aggrieved employee must first make out a *prima facie* case of retaliation. *Brown*, 597 F.3d at 1181.

To establish a *prima facie* case for retaliation under Title VII, a plaintiff must show that (1) she was engaged in statutorily protected activity; (2) she suffered one or more adverse employment action(s); and (3) a causal link exists between the protected activity and the adverse employment action(s). *See Furcron v. Mail Ctrs.*

---

[4] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). Under Title VII, participating in an investigation, proceeding, or hearing pursuant to a charge of unlawful discrimination is protected activity. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 2615.

To prove an adverse action in the context of a retaliation claim, the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *accord Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008). Materially adverse action need not be as serious as outright termination but may also encompass "adverse actions which fall short of ultimate employment decisions," such as a written reprimand. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455–56 (11th Cir. 1998). The Eleventh Circuit has noted that "the cumulative weight of numerous individual incidents can be considered in determining whether the employee experienced materially adverse action." *Putman v. Sec'y, Dep't of Veterans Affs.*, 510 F. App'x 827, 831 (11th Cir. 2013) (citing *Shannon v. Bellsouth Telecommc'ns, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)).

As part of her *prima facie* case, a plaintiff must also establish that a causal connection exists between her statutorily protected activity and the alleged adverse employment action(s) she suffered. *Furcron*, 843 F.3d at 1310. To do so, the plaintiff

must prove that, but for the employer's desire to retaliate, she would not have suffered the adverse employment action(s). *Booth v. Pasco Cnty.,* 757 F.3d 1198, 1207 (11th Cir. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 363 (2013)).

A plaintiff can establish a causal connection if she can show sufficient evidence that the employer knew of her statutorily protected activity and that there was a close temporal proximity between this awareness and the adverse employment action(s). *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that the temporal proximity must be "very close"). Title VII measures temporal proximity from the date the defendant becomes aware of the protected activity. *See Farley v Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir. 1999) (noting that temporal proximity is measured between "awareness [of the protected activity] and the adverse employment action[(s)]").

A claim of retaliation fails as a matter of law "[i]f there is a substantial delay between the protected expression and the adverse action[(s)] in the absence of other evidence tending to show causation." *Higdon*, 393 F.3d at 1220. A plaintiff may still establish a causal connection if there is sufficient "additional evidence to demonstrate a causal connection, such as a pattern of antagonism or that the [first]

adverse action was the first opportunity for the employer to retaliate." *Ward v. United Parcel Serv.*, 580 F. App'x 735, 739 (11th Cir. 2014); *see Morris v. Bessemer Bd. of Educ.*, No. CV-10-BE-240-S, 2013 WL 549896, at *15 (N.D. Ala. Feb. 13, 2013).

If a plaintiff has made out a *prima facie* case for retaliation, the burden of production then shifts to the defendant to articulate legitimate, nondiscriminatory reasons for its action(s). *Brown*, 597 F.3d at 1181 (quoting *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009)). Once the defendant has articulated a legitimate, nondiscriminatory reason for any adverse actions, the plaintiff must "demonstrate that [the defendant's] proffered reason was not the true reason for the employment decision[(s)] . . . [The plaintiff] may succeed in this either directly by persuading the court that a [retaliatory motive] more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). A plaintiff survives summary judgment if she produces sufficient evidence to allow a reasonable factfinder to disbelieve the employer's articulated reasons for its decision(s). *Jackson*, 405 F.3d at 1289; *Rioux v. City of Atlanta*, 520 F.3d 1269, 1278 (11th Cir. 2008) (noting that the plaintiff must show "weaknesses or implausibilities" in the defendant's explanation).

1. *Prima Facie* Case

Wilson engaged in a statutorily protected activity when she submitted a complaint to Jones alleging sexual harassment by Rogers. *See Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) ("Statutorily protected expression includes . . . complaining to superiors about sexual harassment."). Wilson asserts that she suffered retaliatory and adverse employment actions when Jones denied her requests for EV and when MBUSI terminated her employment on the basis of the CPR she received as a result. (Doc. 1 at 8.)

Approximately thirty-nine days elapsed between Wilson filing the sexual harassment complaint against Rogers and the first denial of her EV that resulted in her accumulation of two attendance occurrences. (*See* Doc. 1 at 8; Doc. 25 at 5, 8.) Thirty-nine days is close enough in temporal proximity to establish a causal connection. *See Farley*, 197 F.3d at 1337 (stating that fifty-two days is sufficient temporal proximity to satisfy the causation element of the *prima facie* case). Wilson further alleges that, but for her filing the sexual harassment complaint, Jones would have granted her EV in January and February 2020, and she would never have received another CPR. (Doc. 1 at 8.) In light of the denials of EV that formed the basis for Wilson's termination, a reasonable jury could find a causal connection between her sexual harassment complaint and her termination. Because Wilson

engaged in a statutorily protected activity when she submitted the complaint, suffered an adverse employment action when Jones denied her EV and when she was terminated, and established a causal link between the harassment complaint and her termination, Wilson has established a *prima facie* case of retaliation.

### 2.     Legitimate, Nonretaliatory Reason and Pretext

MBUSI argues that Wilson's termination was based solely on the fact that she received a Level I CPR due to her attendance infractions while she was under an active Level III CPR. (Doc. 25 at 17–18.) Although a defendant's burden in rebutting a presumption of discrimination is "exceedingly light," *see Furcron*, 843 F.3d at 1312–13 (quoting *Smith v. Horner*, 839 F.2d 1530, 1537 (11th Cir. 1988)), MBUSI nonetheless misses the mark.

MBUSI's attendance and disciplinary policies are not in dispute. Wilson does not contest that an employee who receives a Level I CPR while under an active Level III CPR is subject to termination pursuant to MBUSI's policy. Rather, Wilson argues that all of the adverse employment actions — i.e., the two denials of EV and her termination — were retaliatory. MBUSI, on the other hand, argues that the first two allegedly retaliatory actions created a legitimate reason for the final allegedly retaliatory action, essentially proffering that no retaliation occurred because a retaliatory action provided a legitimate reason for Wilson's termination.

Even assuming that MBUSI's explanation constituted a legitimate, nonretaliatory, reason, Wilson has produced sufficient evidence to create a genuine issue of material fact as to whether MBUSI's proffered reason was pretextual. First, Wilson reiterates the temporal proximity — thirty-nine days — of her sexual harassment complaint and the first instance of Jones denying her EV. (Doc. 27 at 26.) *See Arrington v. Cobb Cnty.*, 139 F.3d 865, 875 n.20 (11th Cir. 1998), *as amended* (May 28, 1998) ("A plaintiff may rely on the same evidence both to establish her prima facie case and to cast doubt on the defendant's nondiscriminatory explanations."). Additionally, Wilson highlights the personal relationships at play, noting that Jones was Rogers's direct supervisor. (Doc. 27 at 26.)

Wilson further alleges that Jones had "unfettered discretion" to approve or deny requests for EV. (*Id.*) MBUSI contends that employees may only use EV for documented sickness (doc. 25 at 10) and that Group Leaders, such as Jones, do not have the discretion to grant EV for other reasons. (Doc. 28 at 3–6.) Conversely, Wilson asserts that the decision on whether to approve EV lies within the purview of the Group Leader, that there is no comprehensive list of acceptable reasons for EV, and that EV has been approved for reasons other than documented sickness. (Doc. 27 at 6–7.) Wilson also points to MBUSI's EV policy, which provides a presumably non-exhaustive list of permissible reasons to use EV that includes traffic,

weather, and visiting the on-site medical clinic and ends with "etc." (*Id.*; Doc. 26-5 at 19–20.) Moreover, MBUSI's Handbook notes that requests for EV require the approval of the employee's Group Leader or Manager and that the "[u]se of EV will prevent occurrences in [the employee's] attendance record when approved by [the employee's] Group Leader or Manager." (Doc. 26-5 at 113.)

Considering the dispute as to whether MBUSI's policy permits Group Leaders to approve EV for the reasons Wilson provided and viewing the evidence in the light most favorable to Wilson,[5] a reasonable jury could find that MBUSI's reasons for denying Wilson's EV and terminating her were pretextual. Wilson has thus presented sufficient evidence to survive summary judgment.

## V.  Conclusion

For the reasons stated above, MBUSI's Motion for Summary Judgment (doc. 25) is hereby DENIED. A separate Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** AND **ORDERED** ON MARCH 17, 2023.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

211913

---

[5] *See* FED. R. CIV. P. 56(a); *Hickson Corp.*, 357 F.3d at 1260.